IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**JENNIFER FARBER**                                                                  **PLAINTIFF**

V.                           No. 3:22-CV-00166-ERE

**KILOLO KIJAKAZI, Acting
Commissioner of Social Security**                                         **DEFENDANT**

**ORDER**[1]

Plaintiff Jennifer Farber appeals the Social Security Administration Commissioner's final decision denying her Title II application for disability benefits. For reasons set out below, the Commissioner's decision is AFFIRMED.

**I.    Background**

On September 1, 2020, Ms. Farber protectively filed an application for benefits due to migraines, osteoarthritis, fibromyalgia, irritable bowel syndrome, bone spurs, hypothyroidism, hypertension, manic and aggressive bipolar disorder, anxiety, post-traumatic stress disorder, bilateral knee problems, right ankle problems, and scoliosis. *Tr. 15, 279.*

Ms. Farber's claim was denied initially and upon reconsideration. At Ms. Farber's request, an Administrative Law Judge ("ALJ") held a hearing on July 22, 2021, where Ms. Farber appeared with her lawyer, and the ALJ heard testimony

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

1

from Ms. Farber and a vocational expert ("VE"). *Tr. 40-66*. The ALJ issued a decision on August 20, 2021, finding that Ms. Farber was not disabled. *Tr. 12-39*. The Appeals Council denied Ms. Farber's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-6*.

Ms. Farber, who was forty-one years old at the time of the hearing, has a college degree and past relevant work experience as a parole officer, correction treatment specialist, and case manager. *Tr. 45-46, 62-63*.

## II.   The ALJ's Decision[2]

The ALJ found that Ms. Farber had not engaged in substantial gainful activity since April 30, 2020, the alleged onset date. *Tr. 18*. The ALJ concluded that Ms. Farber had the following severe impairments: osteoarthritis, cervical and lumbar disc degeneration, bilateral shoulder dysfunction, status-post right lateral ankle ligament reconstruction and peroneal tendon surgery, migraines, hypothyroidism, obesity, anxiety, PTSD, bipolar disorder, and panic disorder. *Id.* However, the ALJ found that Ms. Farber did not have an impairment or combination of impairments meeting

---

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g).

or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id. at 19.*

According to the ALJ, Ms. Farber had the residual functional capacity ("RFC") to perform sedentary work, except that she was limited to occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; occasional exposure to unprotected heights, dangerous machinery, and moving machinery; never climbing ladders, ropes, or scaffolds; and work where interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote with few variables and little judgment; and supervision required is simple, direct, and concrete. *Tr. 22*.

In response to hypothetical questions incorporating these limitations, the VE testified that potential jobs were available in the national economy, including final assembler, compact assembler, and jewelry preparer. *Tr. 63*. Accordingly, the ALJ found that Ms. Farber was not disabled.

### III. Discussion

#### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in

this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B. Ms. Farber's Arguments for Reversal

Ms. Farber contends that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in: (1) his treatment of the opinion evidence; (2) finding an RFC inconsistent with her impairments; and (3) improperly evaluating her subjective complaints. *Doc. 10 at 27, 30, 34.* After carefully reviewing the record as a whole, the Court affirms the Commissioner.

### C. Analysis

#### 1. The ALJ Did Not Err Regarding the Opinion Evidence

Ms. Farber asserts that the ALJ erred in discounting the opinion of her treating mental health providers, Karen Hall and Tiffany Spargo. *Id. at 27.* In a mental medical source statement ("MMS") dated January 4, 2021, Ms. Hall noted marked limitations in Ms. Farber's ability to maintain concentration for extended periods,

maintain regular attendance, work with others, make simple work-related decisions, and ask simple questions. *Tr. 944-45*. She found that Mr. Farber had extreme limitations in her ability to: (1) complete a normal workday without interruptions from psychological symptoms; (2) accept instructions; (3) get along with co-workers; and (4) maintain socially appropriate behavior. *Tr. 945*. In a January 10, 2021 MMS, Ms. Spargo noted that Ms. Farber had marked limitations in her ability to carry out detailed instructions, maintain concentration, and get along with coworkers. *Tr. 947-948*. She also noted that the severity of Ms. Farber's anxiety made it probable that she "would not be able to maintain attendance at a job . . . ." *Tr. 949*.

The ALJ found both opinions "somewhat persuasive" because, although Ms. Farber's mental condition limited her ability to work, the marked and extreme limitations were not supported by the medical records as a whole. *Tr. 29*. The ALJ also noted that they were inconsistent with Ms. Farber's activities of daily living and the fact that she worked after the alleged onset date. *Tr. 29-30*. The ALJ found that, although Ms. Farber demonstrated mental problems at times, she had never been hospitalized for treatment and repeatedly was "oriented to time, place, and person," had a "fund of knowledge that was appropriate," had normal attention and concentration, was goal directed and organized, and had intact memory. *Tr. 27*. The

medical records support these findings. *Tr. 724-25, 732, 753-55, 757, 762-64, 787, 797, 806, 815, 825, 912, 1061.*

Ms. Farber performs personal care activities without problems, watches her grandkids, feeds and plays with her three dogs, prepares meals, cleans the home, goes out alone, drives, shops in stores, manages finances, swims, rides a motorcycle, and spends time with others in person, on the telephone, and via email, texting, and video chat. *Tr. 23, 335-342.* As the ALJ properly noted, such extensive activities appear to be inconsistent with the extreme limitations suggested in the mental health providers' opinions.

The ALJ also noted that working after the alleged onset date "indicate[s] that [Ms. Farber's] daily activities have been somewhat greater than [she] has generally reported." *Tr. 24.* See *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (finding that when a claimant works during the relevant time period it "undercut[s] her complaints that she is unable to perform any work"). Although Ms. Farber asserted an alleged onset date of April 30, 2020, she reported in June 2020 that she started a job at a long-term care facility for female juveniles. *Tr. 769.* She quit that job and decided to file for disability benefits, not because of her alleged mental impairments, but because she thought she could not pass the heavy lifting requirements. *Tr. 770.*

Additionally, the statements by Ms. Hall and Ms. Spargo were primarily made on check-box forms. The Eighth Circuit has held that medical assessments that

6

"consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses, [and] cite no medical evidence and provide little to no elaboration . . . possess 'little evidentiary value.'" *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citing *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)). When the treating doctor's opinion is only checked boxes without explanation, "that basis alone" is sufficient to support the ALJ giving the "assessment little weight and relying more heavily on other opinions in the record." *Thomas*, 881 F.3d at 675. The ALJ properly addressed the conclusions of Ms. Hall and Ms. Spargo and explained his reasons for discounting them.

### 2. The ALJ's RFC is Supported by the Record

Ms. Farber asserts several reasons that the RFC is not supported by the evidence. First, she argues that there is "no physical assessment from a treating or even an examining physician, leaving the ALJ to base his opinion on the opinions of non-examining agency physicians or to draw upon his own inferences, both of which are improper." *Doc. 10 at 30.* Although an RFC must be supported by "some medical evidence . . .[,] there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). "While an ALJ should recontact a treating or consulting physician if a critical issue is undeveloped, the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to

determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (internal citations and quotations omitted). Ms. Farber "has the burden to offer the evidence necessary to make a valid decision about her claim." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). She "bears a heavy burden in showing the record has been inadequately developed. She must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007). "[A]n ALJ does have a duty to develop the record, [but] this duty is not never-ending . . . ." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). Here, the ALJ properly relied on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and [Ms. Farber's] own description of [her] limitations" in determining her RFC. *Hensley*, 829 F.3d at 932. No error occurred in this regard.

Second, Ms. Farber argues that "the record casts doubt on [Ms.] Farber's ability to perform sedentary work" because she testified that she could sit for only two or three hours. *Doc. 10 at 31*. However, on February 22, 2021 – just a few months before the hearing – Ms. Farber's treating physician found that she could "return to work full duty without restrictions." *Tr. 1046*. A month before that, the same doctor only limited her to light duty, but included no restrictions related to sitting. *Tr. 1054-55*. A lack of physician-imposed restrictions may serve as a reason

8

to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003).

Third, Ms. Farber argues that the ALJ's RFC failed to account for her migraines. *Doc. 10 at 32*. To the contrary, the ALJ specifically included "additional restrictions to account for her migraines," including occasional exposure to unprotected heights, dangerous machinery, and moving machinery, "based on the fully-developed record, *i.e.*, clinical findings, extent and response to treatment, activities of daily living, work activity after the alleged onset date, etc. . . ." *Tr. 28*. Furthermore, the ALJ noted that Ms. Farber's medication helped with migraines, which had improved over time. *Tr. 23, 25, 28*. The medical records support this finding with notations on December 1, 2020 and June 11, 2021 that Ms. Farber's migraines had "improved." *Tr. 725, 1112*. "An impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

Finally, Ms. Farber alleges that the RFC failed to consider her bilateral shoulder dysfunction. *Doc. 10 at 32*. Ms. Farber points out that she complained to her treating doctor about "numbness and tingling" in her shoulder. *Id.* However, this was *before* she had surgery. *Tr. 98*. Post-surgery notes indicated that she was "[d]oing well but still having expected pain." *Id.* At the hearing, she asserted only

that her shoulder was "still sore." *Tr. 54*. Based on the record as a whole, the ALJ did not err by failing to include any reaching limitations in the RFC.

Overall, the evidence supports the ALJ's RFC and contradicts Ms. Farber's argument that the RFC exceeds her abilities.

### 3. The ALJ's Credibility Analysis Was Adequate

Ms. Farber argues that the ALJ erred in discounting the credibility of her subjective complaints. She asserts that the ALJ "focused on [her] daily activities to the exclusion of the *Polaski* factors" that guide the credibility analysis. *Doc. 10 at 35*. These include "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness[,] and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (quotation omitted) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). The Eighth Circuit does not require the ALJ to explicitly discuss each of the *Polaski* factors in the written decision as long as it is clear that they were considered. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). The Court defers to the ALJ's credibility determination "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility." *Nash v. Comm'r*, 907 F.3d 1086, 1090 (8th Cir 2018) (quotation and citation omitted).

Contrary to Ms. Farber's argument, the ALJ's evaluation appropriately considered the *Polaski* factors in determining that Ms. Farber's complaints were not entirely consistent with the record. A significant factor supporting the ALJ's decision was the inconsistency between Ms. Farber's complaints and her admitted activities, which include watching her grandkids, feeding and playing with her three dogs, preparing meals, cleaning the home, riding a motorcycle, etc. *Tr. 335-342*. The ALJ noted that "[o]verall, [Ms. Farber's] daily activities reveal a significant greater functional ability than alleged." *Tr. 23*. Again, the ALJ also properly considered the fact that Ms. Farber worked after her alleged onset date, and she quit that job because it required heavy lifting, a factor considered when limiting Ms. Farber to sedentary work. *Tr. 18, 770. Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (holding that it is proper for the ALJ to consider employment after an alleged onset date of disability because working generally demonstrates an ability to perform substantial gainful activity).

The ALJ cited the numerous normal clinical findings throughout his opinion and found that the record "[did] not contain evidence of abnormal clinical and laboratory findings" to a degree commensurate with her complaints. *Tr. 24*. Additionally, he noted that Ms. Farber's conditions improved with treatment and were well controlled with medications. *Tr. 28*. These findings are supported by the medical records as a whole. *Tr. 723, 725, 1112, 1114*. See *Wilson v. Chater*, 76 F.3d

238, 241 (8th Cir. 1996) (finding that conditions that are controllable by medication cannot be considered disabling).

Substantial evidence supports the ALJ's decision to discount Ms. Farber's credibility.

**IV.   Conclusion**

The ALJ applied proper legal standards in evaluating Ms. Farber's claims, and substantial evidence supports the decision to deny benefits.

Accordingly, Ms. Farber's appeal is DENIED, and judgment will be entered for the Commissioner. The Clerk of Court is directed to close the case.

IT IS SO ORDERED this 3rd day of February, 2023.

_____
UNITED STATES MAGISTRATE JUDGE